Good morning, Your Honors, and may it please the Court, Patricia Young representing Appellant Roosevelt Moore. Mr. Moore was sentenced to 254 years in prison for a series of non-homicide offenses he committed at the age of 16. Mr. Moore's sentence is unconstitutional under Graham v. Florida, in which the Supreme Court held that the Eighth Amendment prohibits a sentence of life without parole for juvenile non-homicide offenders. There are three points I'd like to make today. The first is that Mr. Moore's sentence is the functional equivalent of life without parole. Second, the State Court decision denying Mr. Moore relief was both contrary to and an unreasonable application of Graham. And finally, although I don't intend to spend too much time on the issue because it has been conceded, Graham is retroactively applicable on collateral review. So to begin with, Mr. Moore's sentence of 254 years is the functional equivalent of life without parole because under California law, he will not be parole eligible until he serves at least 50 percent of the sentence. So like a life without parole sentence, Mr. Moore's sentence guarantees he will die in prison without any meaningful opportunity for parole. Yeah, that seems obvious. The question that I'm concerned about is whether or not this sufficiently comes within Graham in the following sense. Graham involved a sentence for a single crime, the home invasion burglary. Now, of course, it involved in some sense the prior crime of the attempted robbery of the restaurant and the hitting of the manager with a steel bar and so on. Here we've got four quite distinct crimes committed over a short period, tried together, and sentenced at the same time. But how do I deal with this distinction between Graham and Moore's case? Two responses to that, Your Honor. The first distinction, let's address the number of crimes. So, yes, Graham did deal with essentially a life sentence for the one crime. But Graham established a categorical rule. And in establishing that categorical rule, the Court explained that this rule was going to apply to a range of crimes. And similarly to the way the Court has established categorical rules in Kennedy, in Roper, and in Atkins, in those cases the issue was the defendants had murdered one person in Atkins and Roper. But the categorical rule is that we cannot execute juveniles and we cannot execute mentally retarded persons. It doesn't matter how many homicide crimes they commit. So even if someone were to come before a court having committed five murders as a juvenile, the categorical rule would still apply there. And so similarly here, despite the fact that there was more than one non-homicide offense, the categorical rule still applies because the distinction is really between homicide and non-homicide, not the number of non-homicide crimes. Well, what if we had, and this is not quite this case, but what if we had a series of crimes, let's have them be the same crimes as in this case, but separated in time, and the State chooses to prosecute separately. So we get one conviction and he's sentenced to 50 years. We get another conviction and he's now sentenced to 50 years consecutive. Third, so on, and finally we get up to 200 years because he's been tried for four different crimes, four different trials, four different sentencing. Then what? I know this is not your case. Right. And again, because it's not the case, the Court would not necessarily have to decide that issue today. But at the end of the day, what Graham does prohibit is keeping a juvenile non-homicide offender in prison for the rest of their life without meaningful opportunity for parole. So in that situation, if the juvenile had been sentenced to 50 years and then they're coming to the next sentence and it's going to be 50 years, at that point, the Graham rationale would apply and have to kick in and give the juvenile non-homicide offender some meaningful opportunity for parole. So perhaps prohibiting the State court from sentencing him to that additional 50 years. So under your reading of Graham, now it's not your case, but I'm kind of looking down the road, under your reading of Graham in these hypothetical cases, for any crimes committed before the age of 18, we cannot end up with an aggregate set of sentences that amount to a de facto life sentence. With one exception, for any non-homicide crimes committed before the age of 18. I'm sorry. Yes, for non-homicides. Yes, Your Honor. Now, so to say that Mr. Morris's sentence is the functional equivalent of life without parole is no different from saying it's materially indistinguishable from life without parole. But what the State court did in this decision, in this case, and that brings me to my second point, the State court did not apply Graham. The State court said Graham is inapplicable. But as we've learned in Terry Williams v. Taylor, when a State court confronts a set of materially indistinguishable facts from a Supreme Court case, it arrives at a different result that is contrary to clearly established Federal law. So the State court acted contrary to Graham in failing to apply Graham. And for the same reason, because Graham is applicable to this set of facts, the State court decision was also an unreasonable application of Graham. Now, the State points to the Sixth Circuit decision in Bunch v. Smith and says this is somehow evidence that there could be fair-minded disagreement, and therefore the State court decision was not unreasonable. But the language from Harrington v. Richter, this fair-minded disagreement, is just another way of articulating the reasonableness standard under 2254d-1. And what the Supreme Court explained in Terry Williams v. Taylor is that this standard is an objective standard. Well, I don't regard the argument of the State articulated in that manner as persuasive, because what the Bunch court and the Sixth Circuit is deciding is not as to whether they, the Sixth Circuit judges, are fair-minded, but they're trying to decide whether the State court judges were fair-minded, which is precisely the question in front of us. Whether the Sixth Circuit judges are fair-minded is not the question. That's exactly my point, Your Honor. The fact that there is a Sixth Circuit case that agrees with the State court opinion does not necessarily mean that the State court opinion was reasonable. I mean, they disagree, and I think if we were to hold your way, we would have to disagree with Bunch, but not on the ground that the Sixth Circuit judges were unreasonable. No, no, no, Your Honor. I'm sorry if I misspoke. I just meant to say that. You characterized the State's argument that way, and I'm not sure whether that's precisely how the State argued it, but, yeah, okay, I got it. I'm saying I missed that because you talked too fast. I'll try to slow down. As a practical matter, now that the State has conceded the retroactivity issues, is there anything that prevents your client from going back to the State court to try to seek relief? So the fact that the State court has conceded the retroactivity standard just means that we are entitled to relief in this Court. And while Mr. Moore could go back to State court, the fact of the matter is he shouldn't for the following reasons. First, Mr. Moore has already fully exhausted his claims by presenting it to the highest State court, and they denied his claim for relief. Second, Mr. Moore is entitled to relief on the facts of this case, and this Court is entitled to grant that relief, does have jurisdiction to do so. And finally, just out of the interest of judicial economy, Mr. Moore has already been through the district court. Here, fully briefed and argued in the Ninth Circuit, to send him back to start the process all over again in the trial court, which is where he'd be required to go, would be a waste of judicial resources. And finally, again, although I don't intend to spend too much time on the issue, Graham is retroactive under Teague's first exception. So unless the Court has any further questions, I'd like to reserve the remainder of my time for rebuttal. Sotomayor, let me ask you another question. This is a follow-up on Judge Wynn's question. We do have the decision from the court of appeal dated 93, and, of course, that's pre-Florida v. Graham v. Florida. It might be actually quite interesting to see what the State might do with this claim, because they've not addressed this claim. No, actually, Your Honor, they have addressed this claim. Mr. Moore filed habeas petitions based on Graham. Oh, I'm sorry. And they did it straight to the California Supreme Court? No. So it's kind of two tracks. First, Mr. Moore filed a pre-Graham habeas petition in the California Supreme Court, essentially making this functional equivalent life without parole argument before Graham was decided. About a week later, Graham was decided, and Mr. Moore immediately filed a habeas petition in the L.A. County Superior Court based on Graham. He was denied there. He then filed a habeas petition in the court of appeal based on Graham, and that's the court that said Graham does not apply. And his proceedings ended when in State court before he came here? He didn't have the benefit of Caballero, which was decided in August of last year by the California Supreme Court? That is correct. His proceedings ended before Caballero was decided. Given that the California Supreme Court has spoken on this issue, you still wouldn't want to come back, go back to State court? Again, to address that point, it is Mr. Moore currently has, based on people versus Caballero, he can file a habeas petition in the L.A. County Superior Court asking for relief. But, again, that is starting the process over. That does not mean that Mr. Moore is currently entitled to relief. He is entitled to try yet again in the California courts. Would there be a procedural bar to proceeding with a new petition in California court, a State court procedural bar? I would argue not based on people versus Caballero, but that's not a guarantee. Okay. Thank you, Your Honors. Good morning, Your Honors. Deputy Attorney General Mary Sanchez, on behalf of Respondent, the Warden. I just wanted to clarify a little bit about the Caballero decision. The Petitioner here filed a petition for writ of habeas corpus in the California Supreme Court, and the Petitioner has a clear path to relief, no procedural bars whatsoever based on Caballero and on the California Supreme Court's denial of his habeas petition without prejudice to any relief he would get in Caballero. So he'd have to go back to the Superior Court. Exactly. Which would then be bound by Caballero. Yes. He would return to Superior Court where there would be a hearing, where evidence would be presented by defense counsel, by the people, and where a decision would be made by the trial court, keeping in mind what Caballero has said, that the defendant has to have a meaningful opportunity to show rehabilitation and growth. And so these are not just pro forma hearings. I think these are hearings that are going to take a serious look at what the Petitioner has done during the 20-some years that he has been in prison. His relief should begin in State court. And that complies with Graham's pronouncements that it is for the State courts to determine how the Petitioner should be granted his relief. I also wanted to point out, however, that the California Court of Appeals decision denying relief was a reasonable decision at the time that it was made because Graham was not clearly established law. And I understand that Judge Fletcher had some problems with the Bunch decision. However, Bunch also cited numerous other cases indicating a split of authority as to how Graham should be applied to Petitioners, such as the one here, who have numerous crimes involving consecutive sentencing, and there is a split in the decisions. And the United States Supreme Court has said in Cain v. Garcia-Espitia that where there's a split of authority, there cannot be a clearly established decision. So, therefore, the Graham decision here is not clearly established authority. The Court of Appeals decision was reasonable, and he should not be getting any relief from this Court based on his claim and based on the requirements of the AEDPA. And so, therefore, his relief is to return back to State court and to pursue his claims under Caballero. That's meaningful relief. He will get his hearing in the State courts. Kennedy. Would you object to the district, a remand to the district court with direction to do stay in advance, that is to say the Federal Pebus petition stays pending so we don't run into any statute limitations or second or successive petition problems while the petitioner pursues relief under Caballeros in the State court? I have no objection to that. Okay. Unless the Court has any questions, I will submit. I would just like to make three quick points. First, Graham was clearly established Federal law at the time that the Court of Appeals denied Mr. Moore's claim. It had been decided. The Court knew what it stood for. It did not apply Graham. Second, Graham does say that it is for the State court to decide how this relief will be applied. However, if this Court were to grant relief, what that relief would look like is to say Mr. Moore is entitled to relief, and then there would be a remand to the State court for resentencing. So even if this Court decides the case and keeps the case without staying it, the relief will still be up to the State court to decide in the first instance. And to say that Mr. Moore is currently entitled to this hearing is not necessarily  the right thing to do. First, Mr. Moore must file that Hebus petition and prove, first, that he's entitled to relief, and then, second, what that relief should look like. And finally, to say that there's a split of authority in the ---- I'm not sure I understood that. You're saying that there's ---- you're saying to me that there's some obstacle to his proceeding against State court now, now with the understanding that the California Supreme Court has held that Graham is retroactive? Not that there's an obstacle, but that it's not an entitlement. He can't just go into the L.A. Superior Court and say, here are my mitigating factors. Resentence me. He has to go in and say, first, I'm entitled to relief for the following reasons. No, he's got to go back in and argue with Graham, right? Exactly. But there's no ---- but I think I've just heard from the State that there's no procedural obstacle for him to him presenting to the State court a Graham argument. Correct. And if he wins on the Graham argument, then he gets a resentencing. If he loses on the Graham argument, you're back in Federal court making the Federal court the same arguments you're now making. Correct. I don't know why you don't want to go back to State court, because State court's not bound by the deference under AEDPA. They just apply Graham as they read it, rather than a sense of what would be an unreasonable outer boundary impermissible reading of Graham. I agree that we would like to go back to State court if this Court decides that that's the best course of action to take. We do not think that's the best course of action. And, again, because Mr. Moore has been in the State court ---- If he goes back, he gets the benefit of Caballero. This is true. That Petitioner, that defendant, got a 110-year sentence and was ordered back to trial court for resentencing. Mr. Moore got a sentence of 254 years and 4 months. And so he's going to get the benefit of Caballero. That's correct, Your Honor. You think that would be the most advantageous course of action for Mr. Moore, given that we're bound by AEDPA deference? And the only reason we do not think that it's most advantageous is because it would be starting the process all over again. And as this Court held in Cooper v. Nevin, a Petitioner is not required to repeatedly exhaust State court avenues before proceeding to Federal court. So I understand that's what the Court wants to do, but that would not be the preferred course of action. Thank you very much. Thank you. Well, what can the Attorney General's office do to expedite this matter, should it go back to the State court? Your Honor, it would actually be in the ball ---- the ball would be in the court of his attorney to file the petition, a State habeas petition, in the trial court. Then the district attorney's office would file perhaps an opposition or a reply. But there would be a hearing. But to get the ball rolling, he's got to file a State habeas petition. I can't do that for him. No. I mean, but what can your office do to expedite this? In other words, you're just saying file it in the Superior Court, and then the DA steps in, huh? That's what's happening. And that has happened in a recent case that appeared before Your Honor, Judge Fletcher, Bell v. Hawes, where it was a slightly different procedural posture. But there was ---- it was a grand claim, and he's now back in the trial court, and they're proceeding on their hearing. So as long as he files his State habeas petition, that's what Caballero says, these defendants can file State habeas petitions in the trial court. So it's up to them to get on the ball and file those State habeas petitions. Our office is not presenting any sort of obstacle. Well, how much time do they have left under the applicable Federal statute limitations? I don't think there's any. I think it's apples and oranges. I don't think there's any limitation other than, you know, California, there's a reasonable time. And that's always been a little bit amorphous. But there's no fixed, you know, one-year limit as there is with the AEDPA, if that's my understanding correctly. That's what I'm asking about. How's that going to fit into the calculus, the AEDPA? It won't fit into the calculus. That one-year time limit will not fit into the calculus. Well, so long as the district court does a stay in advance and does not dismiss this petition. Oh, then I don't think that that will be an issue. I, you know, I don't believe it will be an issue. Yeah. As long as it's held in advance, yes. Okay. Well, you know, there's so many obstacles that have been set up to make it difficult for applicants to be able to be successful for eight years. There's so many traps out there, so that in many ways the great writ is the great joke. I think the court in Caballero was sensitive to the needs of the defendants. If you read the last page, it's talking about the kind of showing that the defendants need to make. But it does clearly state that they need to file State habeas petitions in the trial court where they can present evidence showing, for instance, low IQ, that they were maybe only aiders and abettors in the crime, any number of mitigating factors. Trying to – I think that the Caballero court was very sensitive to the problems that these inmates might have and was sort of laying out for them the kind of showing that they need to make in the trial court. So I think that they sort of have some guidelines in the Caballero decision as to what the showing should be. But there are no clear guidelines. There are no bright-line rules in Caballero because it recognizes that every case is factually different. Yeah. So what's the problem with having the matter decided in this court? Well, I think the issue is Graham states that it's for the State courts to decide in the first instance what the meaningful opportunity is that they should be required to have. So Graham contemplates the State courts making these decisions. I believe that if this court were to remand back to the district court for a stay in abeyance, that would allow the Petitioner's habeas petition to remain viable and ultimately could come back up to this court. I think that would be a good result to have that Federal petition at issue here returned for a stay in abeyance to the district court. Take the process through the State court system. That takes a long time. It might take about a year, maybe a year and a half, correct? And then they get postcard denials. I can't speak to that. That's not always the fact. I can't speculate to that. Well, I mean, probably they get postcard denials in the vast majority of cases. Again, I would ask this Court to refer to the Caballero decision. I think the California Supreme Court was very, very sensitive to the issue of these juveniles who have gotten very, very long terms, that they need to have a sentence that complies with Graham. I think the Court is very mindful that Caballero is a very clear decision, and I think that the State courts here in the first place should be given the opportunity to grant the relief that this petitioner is seeking. All right. Thank you. Thank you. Rebuttal. Just one quick point, Your Honors. The State court has been given the opportunity to grant relief in this case, and it denied Mr. Moore four times. Now, I understand that Caballero came out. Would you slow down just a little bit? You know, I mean, that's a... I apologize. You know, if Abraham Lincoln gave the Gettysburg Address at your pace, it would be over within 10 seconds. I used to be slapped by court reporters in court for this problem. I apologize. Oh, you were top what? I used to be smacked by court reporters for speaking too quickly, so I apologize for that. Oh, okay. Again, Mr. Moore has presented this claim to the State courts. He has done so four times. He has been denied four times. But he's never been denied post-Caballero's, correct? This is true. Yeah. But he is not required to repeatedly seek relief in the State courts before proceeding here in the Federal courts. Yeah. I have to say, I don't quite understand the virtue from your client's perspective of insisting on a decision out of us now when you've got a higher hurdle to jump here than you would have to jump if you were back in State court under Caballero's. I think the nature of the timing that Caballero came out after we were already fully briefed in this court, I think it was just timing was not... No, I understand why we're here right now, but I'm having trouble understanding why it's to the benefit of your client now that we have Caballero's to insist on a decision out of us when the standard you've got to satisfy here is a higher standard than you have to satisfy if you're back in State court. It is a higher standard, but again, because his sentence is the functional equivalent of life without parole, it's materially indistinguishable from life without parole. And therefore, we feel that we meet that higher standard. Yeah. Okay.
judges: Pregerson, Fletcher, Nguyen